**B.J. SOFTWARE SYSTEMS, INC. n/k/a the Herculean Solutions, Inc.,
Appellant,**

v.

**David J. OSINA, Appellee.**

**No. 01–91–00315–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 19, 1992.

Timothy J. Henderson, Todd J. Zucker, Houston, for appellant.

Jack D. Nolan, Houston, for appellee.

Before SAM BASS, COHEN and WILSON, JJ.

## OPINION

WILSON, Justice.

In the trial court, appellee, David J. Osina, sued appellant, B.J. Software Systems n/k/a the Herculean Solutions (Herculean), for breach of contract. Herculean denied the allegations, and filed a counterclaim alleging Osina's actions were wrongful. Osina sought a ruling prior to trial that

both parts of a covenant not to compete contained in the agreement were unenforceable. Herculean responded, and also filed a "mirror" motion for partial summary judgment, requesting that the covenants be declared enforceable. The day before the trial began, the court granted Osina's summary judgment, and ruled the "covenant not to compete in the contract is null, void, and unenforceable."[1] At the trial that followed, a jury returned a verdict in favor of Osina. We reverse and remand.

Herculean markets and sells computer software systems that monitor industrial operations. The system sold by Herculean during the relevant period was known as "Realflex."

On January 1, 1988, Herculean and Osina entered into a contract entitled, "Representative Agreement," under which Osina was engaged as Herculean's primary sales agent. The agreement contained a paragraph relative to the faithfulness expected of Osina as an agent of Herculean. The paragraph is generally known as a covenant not to compete, and is as follows:

> [Osina] will not represent other principals whose products are competitive with [Herculean's] products, except by prior mutual written agreement, during the term of this [a]greement. If [Osina] terminates the [a]greement, [Osina] will not represent other principals whose products are competitive with [Herculean's] products for as long as [Osina] is paid commissions.

The parties construed the first part of the covenant as restricting Osina from competing with Herculean while actively representing Herculean. The second part of the covenant restricts him from competing with Herculean after a termination of the agreement for as long as Osina continues to receive commissions from Herculean in accordance with the agreement.

Under the terms of the agreement, Osina was entitled to commissions based on sales made as a direct result of his activities. The agreement also provided that Osina would receive an overriding commission (the override) of between three and five percent of sales that were the indirect result of Osina's activities. The eligibility of commissions measured on indirect sales orders would cease upon termination of the agreement.

Herculean claims that after Osina began representing Herculean, Osina actively competed with Herculean during the term of the agreement by selling his own similar software system, known as "RCS-7." Herculean terminated Osina for this alleged breach of the covenant not to compete. Herculean provided notice of termination through several letters, including one letter (the termination letter) dated May 17, 1988, which Herculean claims satisfied the termination provisions of the agreement. Whether Osina was terminated consistent with the relevant provisions of the contract was an issue at trial.

In response to this termination, Osina sued Herculean on a breach of contract theory, claiming, in part, that Herculean failed to pay him commissions calculated in accordance with the three-percent override. Osina further alleged Herculean terminated him by means inconsistent with the contract. Herculean defended on the grounds that it was justified in terminating Osina based on Osina's breach of the covenant not to compete, and that the termination letter was in accordance with the terms of the agreement.

At trial, Osina introduced a termination letter from Herculean that did not meet the requirements of the agreement, because it did not give Osina 30–days notice. However, the trial court excluded another termination letter from evidence, because it made reference to the noncompetition covenant that the court had ruled earlier to be unenforceable. Consequently, the jury

was never made aware that an additional termination letter had been sent to Osina, a letter Herculean claimed met the notice requirements of the contract. The jury found in favor of Osina, and its award included damages based on the three-percent override.

In its first six points of error, Herculean argues that the trial court erred in granting Osina's summary judgment motion, because the covenant not to compete was an enforceable covenant. We consider point of error one, the general claim of error based on the granting of Osina's partial summary judgment.

In his motion for summary judgment, Osina offered three theories to support his allegation that the covenant was not enforceable. Osina's theories were:

(1) No consideration was given to him by Herculean for the execution of the covenant.

(2) Osina was engaged in his common calling as a salesman.

(3) The covenant had no time or territorial restrictions.

Because the summary judgment order does not state the specific ground on which it was granted, if any ground is sufficiently proved by the evidence, then the summary judgment was properly granted. *Woomer v. City of Galveston,* 765 S.W.2d 836, 837 (Tex.App.—Houston [1st Dist.] 1988, writ denied). Thus, Herculean must show that each of the independent arguments alleged by Osina in the motion is insufficient to support the order. *Tilotta v. Goodal,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, no writ).

■ Osina's first argument in his motion asserts that the covenant not to compete is unenforceable because no consideration was given by Herculean to support the covenant. However, section 15.50 of the Texas Business and Commerce Code provides:

Notwithstanding Section 15.05 of this code, a covenant not to compete is enforceable to the extent that it: (1) is ancillary to an otherwise enforceable agreement, but, if the covenant not to compete is executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration; and....

Tex.Bus. & Com.Code Ann. § 15.50 (Vernon Supp.1992). In this case, it is undisputed that the covenant not to compete was ancillary to an otherwise enforceable agreement. Therefore, no independent consideration was required to support the covenant. The agreement itself contained sufficient consideration to support the covenant. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681–82 (Tex.1990). Thus, Osina's claim that there was no consideration to support the covenant is incorrect, and could not have been proper grounds for the summary judgment. This would be true relative to either part of the covenant.

■ Osina's second claim in his motion asserts that the covenant is unenforceable because of the common calling doctrine. The common calling doctrine states that a person whose profession is considered a "common calling" is not subject to post-employment covenants not to compete.[2] *M.R.S. Datascope Inc. v. Exchange Data Corp.,* 745 S.W.2d 542, 546 (Tex.App.—Houston [1st Dist.] 1988, no writ). Osina supported this argument by attaching to his motion for partial summary judgment an affidavit by him stating in part, "I was simply engaged in the common calling of a salesman." Osina's affidavit was the only summary judgment evidence offered by either side. This argument, however, is also insufficient to support the summary judgment, because the common calling doctrine has been abolished by *DeSantis. DeSantis,* 793 S.W.2d at 683. This would also be true regardless of which part of the covenant is under consideration.

■ Osina's last ground in his summary judgment motion claims that the covenant is not enforceable because it does not contain time and territorial restrictions. Section 15.50 of the Code provides:

[A] covenant not to compete is enforceable to the extent that it: ... (2) contains

---

2. We note the first part of the covenant in question in this case was not a "post-employ-ment" covenant, but applied to Osina while he represented Herculean.

reasonable limitations as to time, geographic area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX.BUS. & COM.CODE ANN. § 15.50 (Vernon Supp.1992). We are not asked, and it is not necessary to decide, whether section 15.50 applies to the first part of the covenant, a "faithful servant provision," which attempts to bind both parties when they are presumably seeking common interests. We do not have a point of error that suggests error by the trial judge in not applying section 15.50 to the covenant at issue.[3]

Herculean argues that *if* the statute applies, the omission of the relevant parameters is not fatal, because section 15.51(c) of the Code provides:

> If the covenant ... does not meet the criteria specified by Subdivision (2) of Section 15.50, the court, at the request of the promisee, shall reform the covenant to the extent necessary to cause the covenant to meet the criteria specified by Subdivision (2) of Section 15.50 and enforce the covenant as reformed....

TEX.BUS. & COM.CODE ANN. § 15.51 (Vernon Supp.1992). Herculean did request that the trial court reform the covenant to bring it into compliance with subdivision 2 of section 15.50 in his response to appellee's motion for partial summary judgment. The trial court had a duty to decide whether section 15.50 applied, and if so, to reform the covenant so that it would be enforceable, or to declare the covenant was incapable of being reformed. The trial judge's decision that the covenant was void was not sufficient to support the summary judgment, because the trial court was obligated to reform it consistent with the statute upon Herculean's request, and the court failed to do so.

None of the grounds asserted by Osina in support of his summary judgment motion were sufficient to support a summary judgment. We find Osina was not entitled to summary judgment as a matter of law.

Point of error one is sustained. It is not necessary that we decide any additional specific point of error relative to the granting of the summary judgment.

Herculean asserts in its seventh point of error the trial court erred in denying its motion for partial summary judgment, which requested that the court declare the covenant enforceable. We find no order signed by the trial judge denying appellant's motion. In the absence of an appealable order, this matter is not properly before the Court. *See Cherry v. Reed,* 512 S.W.2d 705, 706 (Tex.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.).

In its eighth point of error, Herculean claims the trial court erred in denying its request for reformation of the covenant not to compete. Based on the earlier discussion of section 15.51(c) and the fact that Herculean requested a reformation, the trial court's denial was error. The eighth point of error is sustained.

Having sustained Herculean's first and eighth points of error, we reverse and remand to the trial court for reformation of the covenant consistent with the statutory guidelines where applicable, and for a new trial.

---

**3.** We note that section 2 of the 1989 Act provides that "This Act applies to a covenant entered into before, on, or after the effective date of this Act." Act of Aug. 28, 1989, 71st Leg., ch. 1193, § 1. This provision does not answer the question as to whether the Act controls the covenant during the primary term of the agreement before us.