Debbie LIGHT, Petitioner,

v.

CENTEL CELLULAR COMPANY OF TEXAS, Successor–in–Interest to United Telespectrum, Inc., Respondent.

No. D–3262.

Supreme Court of Texas.

Argued Feb. 17, 1994.

Decided June 2, 1994.

Gregory P. Grajczyk, Bruce A. Smith, Longview, for petitioner.

James T. Womack, G.R. Akin, Longview, for respondent.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HECHT, GAMMAGE, ENOCH and SPECTOR, Justices, join.

In this restraint of trade case,[1] Debbie Light sued Centel Cellular Company of Texas (Centel), successor-in-interest to United TeleSpectrum, Inc. (United), claiming, among other things, that a covenant not to compete that she had signed was unenforceable and void. Light also sought damages from Centel for tortious interference with prospective contracts. The trial court rendered judgment that the covenant not to compete was unenforceable and that Light recover damages against Centel for her tortious interference claim. The court of appeals reversed and rendered judgment that Light take nothing against Centel, holding that the covenant was enforceable. 841 S.W.2d 95, 99–100.

Under sections 15.50 et seq. of the Texas Business and Commerce Code ("the Covenants Not to Compete Act"), which govern our resolution of this case, we hold that the covenant not to compete is unenforceable. Although Light and United did have an otherwise enforceable agreement between them, the covenant was not ancillary to or a part of that otherwise enforceable agreement. Accordingly, we reverse the judgment of the court of appeals and remand the case to that court for further proceedings consistent with this opinion.

In 1985, Light was hired by United to sell pagers. In 1987, United was granted a license to sell cellular mobile communications products and services in the Longview/Tyler/Marshall market area. In order to keep her job and before she was able to begin selling cellular products, Light was required to execute an agreement which included a covenant not to compete. After resigning in

May of 1988, and after Centel, as the successor-in-interest to United, declined to voluntarily release Light from the covenant not to compete, Light sued Centel.

 In 1989, responding to decisions from this court, the Legislature passed the Covenants Not to Compete Act, a bill adding sections 15.50 and 15.51 to the Texas Business and Commerce Code.[2] Acts of June 16, 1989, ch. 1193, § 1 1989 Tex.Gen.Laws 4852 (effective Aug. 28, 1989). The 1989 amendments were themselves amended in 1993. Acts of May 13, 1993, ch. 965, § 1 1993 Tex.Gen.Laws 4201 (effective Sept. 1, 1993). Section 15.50 now provides:

### § 15.50. Criteria for Enforceability of Covenants not to Compete

Notwithstanding Section 15.05 [which generally declares restraints on competition unlawful] of this code, a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX.BUS. & COM.CODE § 15.50 (Vernon Supp. 1994). The 1993 amendments also added section 15.52, which provides that:

### § 15.52. Preemption of Other Law

The criteria for enforceability of a covenant not to compete provided by Section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and

---

1. Our prior opinion in this cause, 37 TEX.SUP.CT.J. 17 (Oct. 6, 1993) (per curiam), was withdrawn when this cause was set for oral submission. 37 TEX.SUP.CT.J. 429 (Feb. 2, 1994).

2. See Robert W. Hamilton, The Texas Business Law Foundation and Proposed Business Legislation in Texas, 10 CORP. COUNSEL REV. (Tex.) 1, 36–37 (1991) ("Despite the enactment of Foundation sponsored legislation in 1989 to overrule certain aspects of the portion of the DeSantis v. Wacken-

hut [31 TEX.SUP.CT.J. 616 (July 13, 1988) superseded by, 793 S.W.2d 670 (Tex.1990)] opinion relating to covenants not to compete, there are some indications that courts may not construe and apply this legislation consistently with legislative intention. The Foundation is monitoring developments in this area, and may propose additional legislation if developments warrant.") (footnote omitted).

remedies in an action to enforce a covenant not to compete under common law or otherwise.

Tex.Bus. & Com.Code § 15.52 (Vernon Supp. 1994). Section 15.52 makes clear that the Legislature intended the Covenants Not to Compete Act to largely supplant the Texas common law relating to enforcement of covenants not to compete. Thus, we apply the Covenants Not to Compete Act to the facts of this case, in lieu of "any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise." Before applying the Covenants Not to Compete Act, though, we must determine whether it applies to this particular restraint, which predates these amendments. Section 5 of the 1993 amendatory act provides that:

> This Act applies to a covenant not to compete entered into before, on, or after the effective date of this Act unless the enforceability of the covenant has been finally adjudicated by a court of competent jurisdiction before the effective date [September 1, 1993] of this Act.

Acts of May 13, 1993, ch. 965, § 5 1993 Tex.Gen.Laws 4202 (effective Sept. 1, 1993). Thus, the Covenants Not to Compete Act applies retroactively to this case.[3]

■ Section 15.50 provides two criteria for the enforceability of a covenant not to compete: the covenant must (1) be ancillary to or part of an otherwise enforceable agreement[4] at the time the agreement is made and (2) contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. The enforceability of a covenant not to compete, including the question of whether a covenant not to compete is a reasonable restraint of trade, is a question of law for the court. *Martin v. Credit Protection Ass'n, Inc.*, 793 S.W.2d 667, 668–69 (Tex.1990).

We first determine under the terms of the statute whether the covenant not to compete in this case is ancillary to or a part of an otherwise enforceable agreement at the time the agreement is made. Section 15.50 requires us to make two initial inquiries as to formation of the covenant not to compete: (1) is there an otherwise enforceable agreement, to which (2) the covenant not to compete is ancillary to or a part of at the time the agreement is made.

## I.

■ Although Light was an employee-at-will, and by definition, she and her employer could not have an "otherwise enforceable agreement" between them pertaining to, for example, the duration of her employment, at-will employment does *not* preclude the formation of other contracts between employer and employee. At-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at will. Consideration for a promise, by either the employee or the employer in an at-will employment, cannot be dependent on a period of continued employ-

---

3. We do not address the constitutionality of this retroactive application because this issue has not been preserved for our review.

4. The original version of the 1993 amendatory act provided that the covenant had to be ancillary to or a part of a "valid transaction or relationship." This is identical to the common law requirement, which we stated in *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681–82 (Tex. 1990):

> [An] agreement not to compete must be ancillary to an otherwise valid transaction or relationship.... Such a restraint on competition

is unreasonable unless it is part of and subsidiary to an otherwise valid transaction or relationship, which gives rise to an interest worthy of protection.... Such transactions or relationships include the purchase and sale of a business, and employment relationships.

Although the Legislature appears to have intended to broaden the enforceability of covenants not to compete in employment relationships, the committee substitute selected the narrower concept of "an otherwise enforceable agreement," instead of "an otherwise valid transaction or relationship." House Committee on Business and Industry, Bill Analysis, Tex.H.B. 7, 73d Leg., R S. (1993).

ment.[5] Such a promise would be illusory because it fails to bind the promisor who always retains the option of discontinuing employment in lieu of performance. *East Line & Red River R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888) (noting that in at-will employment, "it is no breach of contract to refuse to receive further services"). When illusory promises are all that support a purported bilateral contract, there is no contract.[6] In short, we hold that "otherwise enforceable agreements" can emanate from at-will employment so long as the consider-ation for any promise is not illusory.[7] This holding does not conflict with our recent decision in *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830 (Tex.1992), because in that case there was no otherwise enforceable agreement between the parties and we similarly held that the at-will employment relationship alone could not constitute an otherwise enforceable agreement. *Id.* at 832–33.

In the "agreement" between Light and United,[8] there are only three promises that

---

5. Any promise made by either employer or employee that depends on an additional period of employment is illusory because it is conditioned upon something that is exclusively within the control of the promisor. *See generally* E. ALLAN FARNSWORTH, CONTRACTS 72–82 (1982) (explaining that if the obligation of a promise is terminable at will, the promise is illusory). Thus, the promise of a raise to an at-will employee, for example, would be illusory because it is dependent upon some period of continued employment. Upon promising a raise in wages, the employer could fire the employee and be under no obligation to perform the promise.

6. If only one promise is illusory, a unilateral contract can still be formed; the non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by performance. *See* FARNSWORTH, *supra* note 4, at 75–76. For example, suppose an employee promises not to disclose an employer's trade secrets and other proprietary information, if the employer gives the employee such specialized training and information during the employee's employment. If the employee merely sought a promise to perform from the employer, such a promise would be illusory because the employer could fire the employee and escape the obligation to perform. If, however, the employer accepts the employee's offer by performing, in other words by providing the training, a unilateral contract is created in which the employee is now bound by the employee's promise. *See id.* at 76 (describing the non-illusory promise as a disguised offer). The fact that the employer was not bound to perform because he could have fired the employee is irrelevant; if he has performed, he has accepted the employee's offer and created a binding unilateral contract. To form such a unilateral contract, however, (1) the performance must be bargained-for so that it is not rendered past consideration, *see id.* at 50–59, and (2) acceptance must be by performance and not by a promise to perform. Such a unilateral contract existed between Light and United as to Light's compensation. But such unilateral contract, since it could be accepted only by future performance, could not support a covenant not to compete inasmuch as it was not an "otherwise enforceable agreement at the time the agreement is made" as required by § 15.50.

7. We reach this conclusion on the basis of black-letter contract law, and not because the Legislature added the words "at-will" to § 15.51, which now provides, in pertinent part:

(b) If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, *for a term or at will*, the promisee has the burden of establishing that the covenant meets the criteria specified by Section 15.50 of this code. TEX.BUS. & COM.CODE § 15.51 (Vernon Supp.1994) (emphasis added). As written, part (b) has no meaning, because there cannot be an "[otherwise enforceable] agreement" which "obligate[s]" a promisor "at will." Describing something as an at-will obligation is nonsensical.

8. The agreement provides in pertinent part:

AGREEMENT BETWEEN UNITED
TELESPECTRUM, INC. AND SALESPERSON

This agreement is entered this 8th day of October 198[7], between United TeleSpectrum, Inc., and Debbie Light....

. . . .

The parties agree that Salesperson will have primary contact with the members of the public who will be TeleSpectrum's customers for mobile radio communications services. For this reason, the customers who are serviced by Salesperson may come to associate the service they receive with him/her rather than with United TeleSpectrum itself.

The parties agree that, in the course of employment, Salesperson will acquire confidential customer-related information that could damage TeleSpectrum if it were to come into the possession of TeleSpectrum's competition in the service area.

. . . .

WHEREFORE, for these reasons, and in consideration of their mutual promises recited herein, the parties agree as follows:

1. United TeleSpectrum will employ Salesperson in the Tyler, Longview, Kilgore, Marshall service area or in any of its other service areas, as the parties may agree upon in the future. This employment is terminable at the

are not illusory and thus capable of serving as consideration for any agreement.[9] Those three promises are: (1) United's promise to provide "initial ... specialized training" to Light; (2) Light's promise to provide 14 days' notice to United to terminate employment;[10] (3) Light's promise to provide an inventory of all United property upon termination. Even if Light had resigned or been fired after this agreement was executed, United would still have been required to provide the initial training. Similarly, the fact that Light could terminate the employment at her will in no way renders her two promises illusory. Thus, an otherwise enforceable agreement for United to train Light in exchange for Light's giving 14 days' notice to terminate employment and Light's providing an inventory upon termination, existed between Light and United.[11]

## II.

The second inquiry compelled by section 15.50 is whether the covenant not to compete

---

will of either Salesperson or United TeleSpectrum.

2. United TeleSpectrum agrees to pay Salesperson a salary and commission for sales, pursuant to the then existing sales compensation plans.

3. United TeleSpectrum agrees to provide Salesperson a package of employee benefits in accordance with the policies set forth in manuals and directives of United TeleSpectrum.

4. United TeleSpectrum agrees to provide the salesperson initial and on-going specialized training necessary to sell the mobile radio communications services United TeleSpectrum offers.

5. Salesperson agrees to provide United TeleSpectrum 14 days notice to terminate employment.

6. Upon such notice, Salesperson agrees to provide United TeleSpectrum an inventory of all United TeleSpectrum property in his/her possession and agrees to make arrangements with his/her regional sales manager to return all such property. As used in this paragraph, United TeleSpectrum's property includes all customer-related material, in whatever form, whether prepared by Salesperson or others.

7. Salesperson agrees, upon termination of employment with United TeleSpectrum, and for a period of ONE YEAR thereafter, he/she will not directly or indirectly compete with United TeleSpectrum in the Longview, Tyler, Marshall service area. Salesperson agrees that this paragraph prohibits him/her from accepting employment in the Longview, Tyler, Marshall service area from any mobile communications service provider, or any agent or reseller of a mobile communications service provider, as a salesperson, or in any other capacity that would give the salesperson customer contact or that would permit the use of the customer related information he/she acquired in the course of his/her employment with United TeleSpectrum.

8. Salesperson agrees that the prohibition stated in paragraph 7 above also prohibits him/her from acting as an independent agent of any mobile radio communications provider, agent or reseller in the Longview, Tyler, Marshall geographic service area.

9. The referenced geographic service area also includes any future expansions of its service area which United TeleSpectrum may implement in the vicinity immediately surrounding the present service area, during the time the salesperson is employed by United TeleSpectrum.

10. Salesperson agrees that any violation by him/her of the promises in paragraph 6 through 8 will damage United TeleSpectrum and will entitle United TeleSpectrum to obtain an injunction against him/her and will entitle United TeleSpectrum to any and all other damages or remedies available by law or equity. AGREED THIS 8th DAY OF October, 1987.
Salesperson
Debbie Light
/s/
United Telespectrum, Inc.
Barbara Pachter
/s/

---

9. Every other promise in the agreement between Light and United (i.e., promise to employ at-will in paragraph 1, promise to pay salary and commissions in paragraph 2, promise to provide package of *employee* benefits in paragraph 3), is illusory as each is dependent upon some interval of continued at-will employment.

10. We need not, and do not, decide the question of whether such a notice provision precludes the employment relationship from being at-will, for even if that provision created an employment contract for a term of two weeks, the covenant at issue would not be ancillary to such an agreement. See *infra* text accompanying footnote 15.

11. The court of appeals held that the October 8, 1987, "written contract of employment ... amended the existing at will oral employment agreement" and could suffice as the otherwise enforceable agreement necessary for formation under § 15.50. 841 S.W.2d at 99. The October 8 "agreement" was not a contract of employment at all; it specifically provided that Light remained an employee at will. We therefore disapprove of this basis for the court of appeals' holding that an otherwise enforceable agreement existed between Light and United.

is ancillary to or part of[12] the otherwise enforceable agreement. Although the Legislature has generally sought to occupy the field with this statute, it did not provide any standards for assessing whether or not a covenant not to compete is ancillary to or a part of an otherwise enforceable agreement.

In *Business Electronics v. Sharp Electronics,* 485 U.S. 717, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988), Justice Stevens argued that a restraint is not ancillary to a contract unless it is designed to enforce a contractual obligation of one of the parties. *Id.* at 739–741 & n. 3, 744–46, 108 S.Ct. at 1527–1529 & n. 3, 1528–29 (Stevens, J., dissenting). Responding on behalf of the Court, Justice Scalia noted, among other things, that under the RESTATEMENT (SECOND) OF CONTRACTS §§ 187, 188 (1981) (the RESTATEMENT), a legitimate restraint may be ancillary to a transaction or relationship, and not necessarily a contract per se. *Business Electronics,* 485 U.S. at 729 n. 3, 108 S.Ct. at 1522 n. 3. As our concern here is whether a covenant is ancillary to an "otherwise enforceable *agreement,* " instead of the broader language of the RESTATEMENT[13] we agree with Justice Stevens' statement of the standard in this context.

■ The designed-to-enforce-a-contractual-obligation standard for assessing whether a covenant is ancillary to an otherwise enforceable agreement, is consistent with our previous decisions regarding the permissible scope of a valid restraint of trade. The otherwise enforceable agreement must give rise to the "interest worthy of protection" by the covenant not to compete. *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 682 (Tex. 1990) (citing § 187 comment b of the RESTATEMENT and noting that business goodwill and confidential or proprietary information are examples of such worthy interests). Therefore, in order for a covenant not to compete to be ancillary to an otherwise enforceable agreement between employer and employee:

(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and

(2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.[14]

Unless both elements of the test are satisfied, the covenant cannot be ancillary to or a part of an otherwise enforceable agreement, and is therefore a naked restraint of trade and unenforceable.

■ The covenant not to compete between Light and United is not ancillary to or a part of the otherwise enforceable agreement between them. While United's consideration (the promise to train) might involve confidential or proprietary information, the covenant not to compete is not designed to enforce any of Light's return promises in the otherwise enforceable agreement.[15] Light did not promise in the otherwise enforceable agreement to not disclose any of the confidential

---

**12.** We interpret the phrase "or part of" to mean more than merely in the same instrument because such a literal reading renders the phrase "at the time the agreement is made" redundant.

**13.** *See supra* note 4.

**14.** Thus if an employer gives an employee confidential and proprietary information or trade secrets in exchange for the employee's promise not to disclose them, and the parties enter into a covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement because:

(1) the consideration given by the employer [the trade secrets] in the otherwise enforceable agreement [exchange of trade secrets for promise not to disclose] must give rise to the employer's interest in restraining the employee from competing [employer has interest in restraining employee with knowledge of employer's trade secrets from competing] and

(2) the covenant must be designed to enforce the employee's consideration or return promise [the promise not to disclose the trade secrets] in the otherwise enforceable agreement.

**15.** In the otherwise enforceable agreement, Light's promises were to give 14 days' notice and provide an inventory upon termination. The covenant not to compete is not designed to enforce either of those promises. The covenant would have enforced an agreement by Light, for example, not to disclose confidential proprietary information after her termination. She did not have this agreement with United.

or proprietary information given to her by United.

Thus, the covenant not to compete between Light and United is unenforceable because it is not ancillary to or a part of the otherwise enforceable agreement between them. As we have found the covenant to be unenforceable, we reverse the judgment of the court of appeals and remand this cause to that court for consideration of Centel's other, previously unaddressed, points of error.

DOGGETT, J., joins in the judgment only.

HIGHTOWER, Justice, concurring.

I join the court's judgment in this cause. I continue to believe that an at will employment "relationship" or "contract" may not be "an otherwise enforceable agreement." If the employment is "at will," it is not an otherwise enforceable agreement.