Willie Thornton v. State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-00-220-CV

     RIMKUS CONSULTING GROUP, INC.
                                                                         Appellant
     v.

     HAROLD F. PHILLIPS,
                                                                         Appellee
 

From the 113th District Court
Harris County, Texas
                                        Trial Court # 98-20275
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      This is an appeal from a motion for summary judgment granted in favor of appellee Harold
F. Phillips [“Phillips”], defendant in the trial court, in a breach of employment contract case. 
Phillips is a former Rimkus Consulting Group, Inc. [“Rimkus”] employee. Rimkus sued Phillips
in the court below contending that he breached a written covenant not to compete when he went
to work for a competing company following the termination of his employment.
      Rimkus presents two issues on appeal: (1) whether the trial court erred in concluding, as a
matter of law, that the non-competition clause contained within Phillips employment agreement
was unenforceable and in denying Rimkus recovery for damages; and (2) whether the trial court
erred in denying Rimkus’ request to reform the covenant not to compete. We will reverse and
remand.
A. Background
      We begin with a review of the pertinent facts. Rimkus provides engineering and consulting
services to businesses in the private sector. Phillips was employed by Rimkus as an engineer. As
Rimkus’s employee, Phillips was presented with and signed a written covenant not to compete
prepared by Rimkus. In pertinent part, it provided:
8. Covenant Not to Compete. The parties agree that Company has developed and
will develop systems, techniques, methodologies, training programs and related
literature, and procedures (hereinafter referred to as “the methods”) for use in its normal
business operations, including marketing and administrative aspects thereof that are
critical to the continuing success and viability of the Company. The parties agree that
Company has a proper proprietary interest in protecting the matters described more
particularly in this paragraph 8 as well as other proprietary matters. It is the intention
of the parties to comply with Section 15.50, et. seq. of the Texas Business and
Commerce Code. It is agreed, for and in consideration of the Company’s agreement to
engage Employee to perform personal services and the resulting access by Employee to
customer names and files, and the methods and techniques of the Company, in-company
and external training provided by Company, trade secrets and other propriety and
confidential information, and other consideration, that so long as Employee is employed
by the Company for eighteen (18) months after such employment ceases for any reason,
whether with or without cause, voluntarily or involuntarily, Employee agrees that he will
not, directly or indirectly, individually or through any interposed person, entity or
enterprise, compete with the Company. Accordingly, during such period, Employee
agrees as follows:
 
a. Employee will not, directly or indirectly, own, manage, finance, control or
participate in the ownership, financing or control of, or be connected as a partner,
principal, agent, employee, independent contractor, management advisor and/or
management consultant with, or use or permit his name or resume to be used in
connection with any business or enterprise performing consulting services similar to those
that are carried on by the Company in the “Designated Geographic Area.” For the
purposes of this Agreement “Designated Geographic Area” shall mean any standard
metropolitan statistical area (or if a client is not located in a standard metropolitan
statistical area, then the city, town or township in which such client is located and the
counties or parishes contiguous thereto) in which a client or clients of the Company are
located and from which such client or clients have engaged Company on not less than five
(5) separate files or engagements during the five (5) calendar years proceeding
termination of Employee’s employment with Company. If Company has received less
than five (5) such assignments or engagements from a client in any Designated
Geographic Area, then Employee shall be free to compete in such Designated Geographic
Area. “Client” shall mean any person or entity represented by the Company on an
assignment or engagement, and shall include, but not be limited to, an owner, an
operating entity, an insurance company, an independent adjustment firm, a governmental
agency, a law firm. Employee further agrees that during the effective period of this
Agreement and this covenant, he will not do any act which is intended, or reasonably
expected, to have a detrimental effect on the business of this Company. This covenant
against competition shall be construed as a separate covenant covering competition within
the State of Texas, or in any State where the Company, directly or indirectly, whether
through itself or its representative or agents, conducts business;
 
b. Employee agrees that after termination of employment with the Company, he will
not, directly or indirectly, solicit, employ or in any other fashion, hire persons who are,
or were, employees, officers or agents of this Company, until such person has terminated
his employment with the Company for a period of eighteen (18) months;
 
c. Employee agrees, that for a period lasting until eighteen (18) months after
termination of his employment, he will not at any time, directly or indirectly, solicit the
Company’s customers.
 
9. Proprietary Information/Trade Secrets.
 
a. The parties acknowledge and agree that the Company has spent and continues to
spend considerable time, effort and money to maintain the Company’s existing client and
client contact data bases for its various clients, and to continue to add new clients and
client contacts respectively to the Company’s client and client contact data bases. This
information is proprietary and a valuable asset to Company obtained at considerable time
and expense. Employee further acknowledges and confirms that prior to his employment
by the Company, he did not have any definitive knowledge with respect to the Company’s
client base or the individuals employed by Company’s clients who are responsible for
letting work to the Company for the types of work Company performs.
 
b. Employee also agrees that all work papers, documents, writings, materials,
photographs, video tapes, drawings, job assignment sheets, time sheets, reports to or
correspondence to or from clients, accounting data or reports of information of any
nature or configuration, client and client contact lists, job or job status reports, Rolodex
or business card files, computer software and data discs, invoices, daily and monthly
reports or analysis sheets, client lists and data, evidentiary exhibits, graphics and other
written presentations, contract files and client files in Employee’s possession and/or used
or intended for use by Employee in connection with his duties are the property of the
Company and Employee agrees that, within twenty-four (24) hours of the termination of
employment from the Company or within twenty-four (24) hours of demand by
Company, all such items and any copies or reproductions thereof shall be returned to the
Company by Employee, and Employee shall execute a certificate, substantially in the
form of Exhibit “a” attached hereto, attesting to his compliance with this provision;
 
c. Employee agrees he shall not, except in the performance of his duties, make or
cause to be made copies, pictures, duplicates, facsimiles or other reproductions of
recordings or any abstracts or summaries of any such work papers, documents, writings,
materials, photographs, video tapes, drawings, job assignment sheets, time sheets,
reports to or correspondence to or from clients, accounting data or reports, information
of any nature or configuration, client and client contact lists, job or job status reports,
Rolodex or business card files, or computer software or data discs, invoices, daily and
monthly reports or analysis sheets, client lists and data, evidentiary exhibits, graphics and
other written presentations, contract files and client files, or remove same from the
premises of the Company except in the performance of his duties. Employee agrees to
surrender all items to the Company within twenty-four (24) hours of the termination of
employment or within twenty-four (24) hours of demand by Company, and Employee
shall execute a certificate, substantially in the form of Exhibit “A” attached hereto,
attesting to this compliance with this provision;
 
d. In the course of his relationship with the Company because of the nature of his
responsibilities and the experience to be acquired at the Company, the Employee will
acquire valuable and confidential information and trade secrets with respect to the
Company’s successful business operations including, but not limited to, the Company’s
existing and completed business and financial methods and practices, plans, and special
methods and processes involved in the operations of the Company’s business, and lists
of the Company’s clients as reflected in part by the items described in 9b and 9c above. 
In addition, the Employee will develop, on behalf of the Company and at the Company’s
expense, a personal acquaintance with the Company’s clients which acquaintance may
constitute the Company’s only, primary, or best contact with such clients. Also,
Employee may develop or be exposed to confidential or trade secret information of the
Company’s clients or others with whom the Company does business. As a consequence
thereof, the Employee will occupy a position of trust and confidence with respect to the
Company’s affairs, services and clients. Maintenance of the confidential and proprietary
character of confidential or trade secret information of the Company, the Company’s
clients or others with whom the Company does business is important to the Company. 
Employee agrees that during the period he is engaged to work for the company and after
such engagement, for so long as such confidential information or trade secrets may
remain confidential, secret or otherwise totally or partially protectable or proprietary, he
will not use or divulge such information except as permitted or required by his duties in
connection with his work with the Company. 

      When Phillips ended his employment with Rimkus on February 13, 1998, he joined Brown
Engineering, a Rimkus competitor, where he was similarly employed as an engineer. Based on
the signed covenant not to compete, Rimkus brought suit against Phillips, seeking injunctive relief
and damages for breach of contract and tortious interference with prospective contractual
relationships. Phillips and Rimkus then filed competing motions for summary judgment on
Rimkus’ breach of contract claim. After the trial court granted the motion, Rimkus non-suited the
interference with contractual relations claim and perfected this appeal.
 B. The Issues on Summary Judgment
      Phillips’s motion for summary judgment on Rimkus’s breach of contract claim was a
“traditional” motion, as opposed to a “no-evidence” motion. See Tex. R. Civ. P. 166a. It alleged
that identical issues had previously been presented in other suits brought by Rimkus against former
employees which had resulted in decisions favoring the former employees. In addition, the motion
alleged that Phillips was entitled to summary judgment on the breach of contract claim as a matter
of law because:
1. Phillips was an at-will employee and the covenant not to compete was not
ancillary to an otherwise enforceable agreement; and,
 
2. the covenant was not reasonable in terms of its limitations as to time, geographic
area, and scope of activities. 

      In its written response, Rimkus did not dispute Phillips’s assertion that he had been an at-will
employee; however, Rimkus strenuously argued that the covenant at issue was ancillary to an
otherwise enforceable agreement and was reasonable in terms of its stated limitations. The trial
court granted summary judgment in favor of Phillips in a general summary judgment order.
      The general rules for reviewing traditional summary judgment motions are well-known. In
a summary judgment case, the issue on appeal is whether the movant (here Phillips) met his
summary judgment burden by establishing that no genuine issue of material fact exists and that the
movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick
v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999); City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and
all doubts about the existence of a genuine issue of material fact are resolved against the movant. 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); Friendswood Dev. Co. v.
McDade + Co., 926 S.W.2d 280, 282 (Tex. 1996); Great Am. Reserve Ins. Co. v. San Antonio
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Therefore, we must view the evidence
and its reasonable inferences in the light most favorable to the nonmovant. Great Am., 391
S.W.2d at 47.
      In deciding whether there is a material fact issue precluding summary judgment, all conflicts
in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. 
Rhone-Poulenc, 997 S.W.2d at 223; Harwell v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170,
173 (Tex. 1995). Evidence that favors the movant’s position will not be considered unless it is
uncontroverted. Great Am., 391 S.W.2d at 47.
      The summary judgment will be affirmed only if the record establishes that the movant has
conclusively proved all essential elements of the movant's cause of action or defense as a matter
of law. Clear Creek Basin, 589 S.W.2d at 678.
      A defendant is entitled to summary judgment if the summary judgment evidence establishes,
as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established. 
Elliott-Williams Co. v. Diaz, 9 S.W.3d 801, 803 (Tex. 1999). The defendant as movant must
present summary judgment evidence that negates an element of the plaintiff’s claim. Once the
defendant produces sufficient evidence to establish the right to summary judgment, the burden
shifts to the plaintiff to come forward with competent controverting evidence raising a genuine
issue of material fact with regard to the element challenged by the defendant. Centeq Realty, Inc.
v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). Finally, the denial of a motion for summary
judgment can be appealed when the trial court grants the opposing party’s motion for summary
judgment. Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).
C. General Rules Of Law Applicable To Covenants Not To Compete
      A covenant not to compete is a restraint of trade and will not be enforced unless it is
reasonable. Travel Masters, Inc. v. Star Tours, Inc., 827 S.W.2d 830, 832 (Tex. 1991). Whether
a covenant not to compete is enforceable presents a question of law. See Light v. Centel Cellular
Co., 883 S.W.2d 642, 644 (Tex. 1994).
      Beginning in 1989, the Texas State Legislature supplanted the prior common-law rules
governing this area of law and provided that in order for a covenant not to compete to be
enforceable it must be: (1) ancillary to or part of an otherwise enforceable agreement at the time
the agreement is made, and (2) contain limitations as to time, geographical area, and scope of
activity to be restrained that are reasonable and do not impose a greater restraint than is necessary
to protect the good will or other business interest of the promisee. Tex. Bus. & Com. Code Ann.
§ 15.50 (Vernon 2002).
      Concerning the first requirement, the Supreme Court has held that in order to be ancillary to
an otherwise enforceable agreement, the consideration given by the employer must be designed
to enforce the agreement and give rise to the employer’s interest in restraining the employee from
competing. See Light, 883 S.W.2d at 647. Stated another way, the employer must make a non-illusory promise in return for which the employee’s promise not to compete was made. Id. at 644-45. A non-illusory promise is one which actually binds the employer. Id. The Supreme Court
has recently held that in the context of at-will employment a promise by an employer which is
based on a period of continued employment is illusory because it fails to bind the employer, who
always retains the option of discontinuing the employment. See In re Halliburton Co., 80 S.W.3d
566, 569 (Tex. 2002).



      D. The Employment Agreement Between The Parties Here Was Not At-Will
      Both Phillips and Rimkus have submitted appellate briefs to this Court which are premised
on the notion that the employment agreement between Phillips and Rimkus was “at-will” in nature. 
After close review of the employment agreement at issue, we are convinced that the agreement
between Phillips and Rimkus did not provide for “at-will” employment. Paragraph 5 of the
Employment Agreement instead provided for renewable ninety-day employment periods during
which Phillips could be discharged only: (1) for cause; or (2) because of a reduction in work force
by Rimkus:
5. Term of Agreement/Termination.
 
a. The initial term of Employee’s employment pursuant to this Agreement shall
commence as of the date hereof and shall continue for a period of ninety (90) days, unless
sooner terminated pursuant to the terms hereof. At the expiration of said ninety (90) day
period, unless sooner terminated pursuant to the terms hereof, this Agreement may be
extended by agreement of the parties for an additional ninety (90) day period. At the
expiration of each successive term, either Company or Employee shall have the option
to terminate this Agreement, unless sooner terminated pursuant to the provisions of this
Agreement.

            b. Termination:
 
(i) This Agreement shall terminate automatically on the Employee’s death or
disability.
 
(ii) Company shall have the right to terminate Employee’s employment under this
Agreement at any time immediately for “cause”, which shall mean for behavior of the
Employee which is harmful to the Company, including, but not limited to, Employee’s
failure to carry out assigned duties on a timely basis according to the standards, policies
and procedures of the Company, failure to otherwise adhere to the Company’s standards,
policies and procedures, dishonesty, willful misconduct, disloyalty, acts of bad faith or
any other breach of this Agreement.
 
(iii) The Employee may terminate Employee’s employment under this Agreement at
any time upon no less than two (2) weeks advance notice to the Company.
 
(iv) Company may terminate Employee’s employment under this Agreement because
of a reduction in work force by Company. In such event, Company shall pay Employee
three (3) weeks salary.

      Under the express terms of the agreement, Rimkus promised Phillips employment for ninety
days, renewable for successive ninety day terms, during which times Phillips could only be
discharged for two conditions detailed in the agreement. This promise was non-illusory because
it could have been enforced by Phillips against Rimkus had his employment been terminated within
one of the ninety day terms for a reason other than that set forth in the agreement. In addition,
Rimkus promised three weeks salary compensation to Phillips in the event he was discharge due
to a reduction in work force by Rimkus. These were non-illusory promises ancillary to the
covenant not to compete.
      In Halliburton, the Supreme Court addressed the related question of whether a promise
between an employer and employee to arbitrate disputes was illusory, and thus unenforceable. Id.
at 568-69. The court held that the arbitration agreement reviewed in Halliburton was enforceable
because the promise to arbitrate was not dependent on continued employment (the employer could
be bound to the arbitration agreement even after the employee’s termination) and was therefore
not illusory. Id. Similarly, in our case, the employment agreement was non-illusory because
Phillips could have bound Rimkus to at least two promises made in the employment agreement:
(1) the promise of continued employment within a ninety day period, unless terminated for good
cause or for reason of a company work force reduction; and (2) the promise of three weeks
severance pay in the event of termination due to company work force reduction.
      Because of our conclusion that the covenant not to compete was ancillary to an otherwise
enforceable agreement, we must address issue two and next determine whether the trial court erred
in failing to honor Rimkus’ request to reform the covenant. As noted above, the trial court’s
summary judgment order was general in nature and did not specify the ground on which summary
judgment was granted in favor of Phillips.
      In the event a covenant not to compete is found to be ancillary to an otherwise enforceable
agreement but contains unreasonable limitations as to time, geographic area, or scope of activity,
the trial court is under a mandatory duty to reform the covenant to the extent necessary to cause
the limitations contained in the covenant to be reasonable. See Tex. Bus. & Com. Code Ann.
§ 15.51(c) (Vernon 2002). Because the summary judgment order was general in nature, it is
unclear whether the trial court’s order was based on its conclusion that the covenant not to
compete was unenforceable because it was not ancillary to an otherwise enforceable agreement,
or because the restrictions contained in the covenant were unreasonable.
      We held in issue one that the covenant was enforceable because it was ancillary to an
otherwise enforceable agreement. The only remaining question, therefore, is whether the
restrictions contained in the covenant are reasonable. It is error for the trial court to fail to reform
the covenant to correct unreasonable restrictions, or to declare the contract incapable of being
reformed, if requested to do so. See B.J. Software Sys., Inc. v. Osina, 827 S.W.2d 543, 546
(Tex. App.—Houston [1st Dist.] 1992, no writ). Here, Rimkus requested, as an alternative
written pleading in the trial court, “reformation of the covenant in accordance with Tex. Bus. &
Com. Code Ann. § 15.51(c),” and its response to the summary judgment alleged that the covenant
contained “reasonable limitations as to time, geographic area and scope which impose no greater
restraint than is necessary to protect the goodwill and other business interests of [Rimkus].” We
hold the trial court was required by Section 15.51(c) to reform any limitation it deemed
unreasonable to the extent necessary to cause the limitations contained in the covenant as to time,
geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint
that is not greater than that necessary to protect the goodwill or other business interest of Rimkus.
      Issues one and two are sustained. The summary judgment order is overruled, and the case
is remanded to the trial court for further proceedings consistent with this opinion.


 
DAVID L. RICHARDS
                                                                       Justice

Before Justice Vance,
          Justice Gray, and
          Justice Richards (Sitting by Assignment)
          (Justice Gray concurring)
Reversed and remanded
Opinion delivered and filed January 8, 2003
Publish
[CV06]