COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-364-CV
 
 
 
31-W 
INSULATION CO., INC.                                                  APPELLANT
 
V.
  
PHIL 
DICKEY                                                                            APPELLEE
 
 
------------
 
FROM 
THE 153RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        Appellant 
31-W Insulation Co., Inc. (“31-W”) appeals from the trial court’s denial 
of 31-W’s request for a temporary injunction seeking to prevent appellee Phil 
Dickey, 31-W’s former employee, from violating the terms of a noncompete 
covenant contained in the parties’ employment contract. In two points, 31-W 
complains that the trial court erred in finding that (1) the noncompete covenant 
was invalid under Texas law and (2) the motion for temporary injunction had to 
be verified. We affirm.
II. FACTUAL AND PROCEDURAL BACKGROUND
        Phil 
Dickey is an experienced insulation salesman, having worked in that field since 
the early 1980s. On October 3, 2001, Dickey began work for the Arlington, Texas 
office of 31-W selling insulation. That same day, Dickey executed a Salesman 
Employment Agreement (the “Agreement”) as a condition of being hired. In the 
Agreement, 31-W agreed to pay Dickey a commission on his sales, reimburse his 
work-related expenses, and pay him a monthly automobile allowance. The Agreement 
specified that Dickey was an at-will employee of 31-W and could be terminated at 
any time, with or without cause, upon two weeks’ notice. Although the 
Agreement required 31-W to continue to compensate Dickey for the entire two-week 
notice period, it also gave 31-W the option of immediately relieving Dickey of 
any further duties upon his termination.
        The 
Agreement further stipulated that, “[i]n return for being granted access to [e]mployer’s 
[c]onfidential [i]nformation,” Dickey promised “not to disclose or use that 
[c]onfidential [i]nformation other than in the proper performance of his duties 
or with the prior written consent of [the] [e]mployer.” Dickey agreed to 
account for all company property in his possession upon termination of his 
employment and to return all documents in his possession or control that 
contained any confidential information to 31-W.
        The 
Agreement also contained a noncompete clause, under which Dickey agreed to 
refrain from competing with 31-W in “the area within a hundred mile radius of 
any of [e]mployer’s locations at which [e]mployee worked” for six months 
following the termination of his employment with 31-W. Dickey agreed that, if he 
violated the Agreement, “the terms of each covenant violated shall be 
automatically extended for a period of six months from the date on which [the] [e]mployee 
permanently ceases the violation” and that 31-W would be entitled to 
injunctive relief restraining him from breaching or threatening to breach the 
Agreement.
        Six 
weeks before completing his second full year of employment, Dickey resigned from 
31-W, apparently in a dispute over commission payments. The following Monday, 
August 18, 2003, he began work selling insulation for Select Insulation Company 
(“Select”), also located in Arlington, Texas and began approaching 
superintendents in various subdivisions in the Dallas-Fort Worth area about 
bidding insulation jobs on behalf of Select. Shortly thereafter, Dickey filed 
suit against 31-W under the Texas Uniform Declaratory Judgment Act “seeking a 
declaratory judgment . . . declaring that the [a]greement, including but not 
limited to [p]aragraphs 7b and 7c in particular [the noncomplete covenants], is 
not enforceable and that [p]laintiff is not in breach or violation of the [a]greement 
by virtue of his employment with his new employer.” 31-W subsequently answered 
and filed a counterclaim, alleging breach of the Agreement by Dickey and seeking 
a temporary injunction in accordance therewith. Following a two-day hearing, the 
trial court denied the temporary injunction request, prompting this appeal.
 
III. STANDARD OF REVIEW—THE TRIAL COURT’S DENIAL 
OF A
TEMPORARY INJUNCTION
 
        We 
review the denial of a temporary injunction under the abuse of discretion 
standard. Walling v. Metcalfe, 863 S.W.2d 56, 57 (Tex. 1993). The 
enforcability of a covenant noncompete is a question of law. Light v. Centel 
Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex. 1994). The issue before the 
trial court in a temporary injunction hearing is whether the applicant is 
entitled to preserve the status quo of the subject matter of the suit until the 
case is tried on the merits. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 
1978). For this court to reverse the trial court, it must be shown that the 
trial court misapplied the law to the facts or that the evidence does not 
reasonably support the trial court’s ruling. State v. S.W. Bell Tele. Co., 
526 S.W.2d 526, 528 (Tex. 1975). Under this standard, the evidence and its valid 
inferences will be viewed in the light most favorable to the ruling, and we may 
not substitute our judgment for the trial court’s. Only arbitrary action by 
the trial court exceeding the bounds of reasonable discretion will warrant a 
reversal. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002). 
Where, as here, the trial court did not file findings of fact and conclusions of 
law, we must uphold the court’s ruling on any legal theory that is supported 
by the evidence. Davis, 571 S.W.2d at 862.
 
IV. LEGAL ANALYSIS—IS DICKEY INSULATED FROM 
LIABILITY?
 
        In 
it’s first point, 31-W argues that the trial court erred in refusing to enjoin 
Dickey from selling insulation for a competitor because the trial court found 
the noncompete covenant to be invalid under Texas statutory law. See Tex. Bus. & Com. Code Ann. § 15.50 (Vernon 2003). Simply put, 
it is 31-W’s contention that because Dickey is in breach of the Agreement, it 
is entitled to an injunction pursuant to the Agreement’s own terms. 
Accordingly, 31-W must show that the Agreement is valid and that there has been 
“an actual or threatened breach of this [a]greement” entitling it to 
injunctive relief as set forth in its paragraph 8. Paragraph 7 of the Agreement 
provides that “[f]or a period of six months following employee’s 
termination, [e]mployee shall not, directly or indirectly, enter into 
competition with [e]mployer in a [r]estrictive [t]erritory . . . [which] is the 
area within a 100-mile radius of any employer’s locations.” After leaving 
31-W’s employment, Dickey immediately went to work for 31-W’s local 
competitor. At the temporary injunction hearing, Dickey testified as follows:
 
Q. 
Finally, Mr. Dickey, I just want to ask you: You do not dispute that since your 
employment ended with 31-W you have been competing with 31-W for [a] competitor 
in the Dallas-Fort Worth area, correct?
 
A. 
Correct.
 
We 
conclude that there has been a breach of the Agreement, thereby leaving 
enforceability of the Agreement the issue to be decided.
        The 
viability of noncompete covenants is addressed in subchapter E of Chapter 15 of 
the Texas Business and Commerce Code. See Tex. 
Bus. & Com. Code Ann. § 15.50-15.52 (Vernon 2004). Section 15.51(b) 
states that “[i]f the primary purpose of the Agreement to which the 
[noncompete] covenant is ancillary is to obligate the promisor to render personal 
services . . . the promisee has the burden of establishing that the covenant 
meets the criteria specified by [s]ection 15.50 of this code.” Id. § 
15.51(b) (emphasis supplied). This provision applies to the employment Agreement 
in this case because the primary purpose of the Agreement is Dickey’s 
employment—that is, engaging Dickey’s personal services of selling 31-W’s 
insulation products. Thus, the noncompete covenant is enforceable if 31-W can 
prove that it meets section 15.50's criteria: the covenant must be “ancillary 
to or part of an otherwise enforceable agreement at the time the 
agreement is made.” Id. § 15.50(a) (emphasis supplied).
        To 
determine whether the noncompete covenant meets this standard, we undertake a 
three-step process. First, we must determine whether an agreement 
“otherwise” exists apart from the noncompete covenant. That is, we set aside 
the Agreement’s noncompete covenants and determine whether any other promises 
remain to bind the parties under the Agreement. Second, we must examine the 
remaining promises to ensure that the Agreement is enforceable apart from the 
noncompete covenant—that the promises are non-illusory promises that the 
parties are in fact bound to perform. Third, if we have concluded that an 
“otherwise enforceable agreement” exists, we must determine whether the 
noncompete covenant is a part of or ancillary to that otherwise enforceable 
agreement. We make this final determination by examining whether the 
Agreement’s remaining promises satisfy the following two factors: (1) the 
employer’s promise must give rise to the employer’s interest in restraining 
the employee from competing; and (2) the noncompete covenant must be designed to 
enforce the employee’s return promise in the otherwise enforceable agreement. Id. 
“Unless both elements of the test are satisfied, the [noncompete] covenant 
cannot be ancillary to or a part of an otherwise enforceable agreement, and is 
therefore a naked restraint of trade and unenforceable.” Light, 883 
S.W.2d at 647.
        Turning 
to the three-part analysis and reviewing the pertinent parts of the Agreement as 
previously described, we first determine whether an agreement “otherwise” 
exists apart from the noncompete covenants. After disregarding paragraphs 7b and 
7c, which are noncompete covenants, and reviewing the remaining promises, we 
conclude that the other terms of the Agreement are sufficient to bind the 
parties and constitute an agreement even in the absence of the noncompete 
covenants.
        We 
turn now to the second step in the analysis and determine whether the remaining 
promises in the Agreement are nonillusory terms that bind the parties to 
perform, thus making the Agreement apart from the noncompete covenant an 
“otherwise enforceable” agreement. It is undisputed that Dickey was an 
employee at will. At-will employment agreements are not themselves “otherwise 
enforceable agreements,” because they are not binding on the employer or 
employee. Travel Masters, Inc. v. Star Tours, Inc., 827 S.W.2d 830, 
832-33 (Tex. 1991). However,
 
at-will 
employment does not preclude the formation of other contracts between employer 
and employee. At-will employees may contract with their employers on any matter 
except those which would limit the ability of either employer or employee to 
terminate the employment at will. Consideration for a promise, by either the 
employee or the employer in an at-will employment, cannot be dependent on a 
period of continued employment. Such a promise would be illusory because it 
fails to bind the promisor who always retains the option of discontinuing 
employment in lieu of performance. When illusory promises are all that support a 
purported bilateral contract, there is no contract. In short, . . . “otherwise 
enforceable agreements” can emanate from at-will employment so long as the 
consideration for any promise is not illusory.
 
Light, 
883 S.W.2d at 644-45.
        The 
Dallas Court of Appeals addresses a similar situation in Strickland v. 
Medtronic, Inc., 97 S.W.3d 835 (Tex. App.—Dallas 2003, pet. dism’d w.o.j.). 
That case involved an interlocutory appeal from an order granting Medtronic Inc. 
a temporary injunction enforcing a noncompete covenant against its former 
at-will employee, Strickland. The court noted that
 
in 
this case there are several nonillusory promises that were capable of serving as 
consideration for the agreement despite Strickland’s at-will status, namely: 
(1) Medtronic’s promise to provide ninety days[’] notice of termination if 
Strickland was terminated without cause; . . . (3) Strickland’s promise not to 
use or disclose confidential information; [and] (4) Strickland’s promise to 
return documents and tangible items upon termination. Medtronic argues that the 
following provision in the employee agreement’s “Introduction” was 
additional consideration by Medtronic. “This agreement is intended to 
recognize that Medtronic provides the Employee with information concerning its 
business, products and customers and entrusts the Employee with business 
relationships and good will of great value to Medtronic.”
 
Id. 
at 838-39. The court held, “even assuming by this [last] provision [that] 
Medtronic impliedly promised to provide confidential information to Strickland, 
we conclude [that] such a promise is illusory because it necessarily depends on 
a period of employment. Medtronic could avoid this obligation by simply firing 
Strickland on the day [that] the employment Agreement was executed.” Id. 
at 839. The same analysis applied to the providing of training by Medtronic and 
was deemed by the court also to be illusory. Id.
        Here, 
31-W’s promise in the Agreement to provide Dickey access to its confidential 
information is illusory for the same reason set forth in Strickland: 31-W 
could terminate Dickey’s employment immediately after signing the Agreement 
and thereby never be obligated to provide him with any confidential information 
at all. On the other hand, certain promises in the Agreement are not illusory 
because they are “not dependant on a period of continued employment”: (a) 
the two weeks’ notice of termination; (b) 31-W’s promise to compensate 
Dickey during that two-weeks notice period; and (c) Dickey’s promise to return 
and not use 31-W’s business information, including confidential information. 
Therefore, because 31-W and Dickey are bound by these nonillusory promises, the 
Agreement is “otherwise enforceable” apart from the noncompete covenant.
        Finally 
under our analysis, we must determine whether the noncompete covenant is a part 
of or ancillary to this otherwise enforceable agreement. To make this 
determination, we test the Agreement, apart from the noncompete covenant, to see 
if (1) 31-W’s remaining enforceable promises give rise to its interest in 
restraining Dickey from competing and (2) the covenant is designed to enforce 
Dickey’s consideration in the otherwise enforceable agreement, recalling that 
both tests must be met. See Light, 883 S.W.2d at 647.
        As 
to whether 31-W’s remaining promises to give Dickey two weeks’ notice of 
termination and to compensate him during that two-week period give rise to its 
interest in restraining Dickey from competing, we find, as in Strickland, 
that “such promises do not give rise to an interest worthy of protection by a 
covenant not to compete.” See Strickland, 97 S.W.3d at 838. As such, 
the noncompete agreement is not ancillary to or part of an otherwise enforceable 
agreement and is therefore unenforceable under section 15.50 of the Texas 
Business and Commerce Code. Accordingly, we cannot say the trial court abused 
its discretion in denying the requested temporary injunction. We overrule 
31-W’s first point.
V. LACK OF VERIFICATION
        By 
its second point, 31-W asserts that the trial court erred if it denied the 
temporary injunction because 31-W’s motion for temporary injunction was 
unverified. The error alleged in this issue has been mooted by the evidentiary 
hearing the trial court held on this motion. See Nguyen v. Interex, Inc., 
93 S.W.3d 288, 298 (Tex. App.—Houston [14th Dist.] 2002, no pet.); Georgiades 
v. Ferrante, 871 S.W.2d 878, 882 (Tex. App.—Houston [14th 
Dist.] 1994, writ denied); Ohlhausen v. Thompson, 704 S.W.2d 434, 437 
(Tex. App.—Houston [14th Dist.] 1986, no writ) (all holding that a 
verified petition for injunctive relief is not required to obtain a permanent 
injunction when a full evidentiary hearing on evidence has been held). 31-W’s 
second point is overruled.
VI. CONCLUSION
        Having 
disposed of 31-W’s points on appeal, we affirm the trial court’s judgment.

 
 
                                                                  BOB 
MCCOY
                                                                  JUSTICE
 
 
PANEL 
A:   LIVINGSTON, DAUPHINOT, and MCCOY, JJ.
 
DELIVERED: 
July 29, 2004