TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-04-00095-CV






S. Merlin McAnelly, Appellant


v.


Brady Medical Clinic, P.A.; Lonnie Lee Vickers; James H. Allen, Jr.;

and Pedro Castro, Appellees 







FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT

NO. 2002134, HONORABLE EMIL KARL PROHL, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Appellant Dr. S. Merlin McAnelly challenges the trial court's judgment non obstante
veredicto (JNOV) in favor of appellees Brady Medical Clinic, Lonnie Vickers, James Allen, and
Pedro Castro (collectively, Brady Medical Clinic). Dr. McAnelly sued to enforce a verbal agreement
that he allegedly made with Brady Medical Clinic. Dr. McAnelly contended that Brady Medical
Clinic promised to pay him $25,000 in exchange for some medical supplies and his promise not to
compete with the clinic's medical practice for two years. Alternatively, he sought damages on
promissory estoppel and quantum meruit grounds. Because the promise not to compete alleged by
McAnelly was unenforceable under Texas law, we affirm the trial court's judgment with regard to
enforcement of the non-compete agreement and the promissory estoppel claim. We reverse and
render judgment with respect to Dr. McAnelly's quantum meruit claim for medical supplies given
to Brady Medical Clinic and remand to the trial court for a determination of attorney's fees.


BACKGROUND


 Dr. McAnelly practiced medicine as a family doctor in Brady, Texas, for over 35
years. At the time of his retirement, Dr. McAnelly was practicing with Dr. Castro in a clinic owned
by West Texas Medical Associates (WTMA). Drs. McAnelly and Castro were employees of WTMA
which paid them a salary based on the revenue each doctor generated, less the operating expenses
of the clinic. WTMA decided it would close its clinic in Brady when Dr. McAnelly announced his
retirement.

 Brady Medical Clinic decided to open a new clinic in the same space. It purchased
the building which housed the clinic and WTMA donated some of its equipment. Brady Medical
Clinic also negotiated with Dr. McAnelly prior to his retirement regarding details of the transition. 
These negotiations and the terms of any agreement between Dr. McAnelly and Brady Medical Clinic
form the basis of the dispute. Dr. McAnelly alleged that in a verbal agreement Brady Medical Clinic
promised to pay him $25,000 in exchange for his promise not to compete and for some medical
supplies remaining in the clinic. Brady Medical Clinic contended that they attempted to negotiate
a price they would pay Dr. McAnelly for his goodwill and the remaining supplies, but the parties
never could agree on the terms.

 Dr. McAnelly retired from his medical practice on December 31, 2001, and Brady
Medical Clinic opened its doors January 1, 2002. Dr. McAnelly wrote a letter to his patients
announcing his retirement and informing them that Brady Medical Clinic would assume his practice. 
Brady Medical Clinic did not pay Dr. McAnelly any money and Dr. McAnelly did not recommend
Brady Medical Clinic to his patients. Dr. McAnelly subsequently brought suit against Brady Medical
Clinic seeking the $25,000 he alleged was promised in exchange for his agreement not to compete
and his share of the medical supplies. The case was tried before a jury and the jury found in favor
of Dr. McAnelly in all respects. The trial court, however, granted Brady Medical Clinic's motion
for JNOV and denied all relief sought by Dr. McAnelly. This appeal followed.


DISCUSSION


Standard of Review

 A JNOV is appropriate when the evidence is conclusive and when one party is
entitled to judgment as a matter of law. Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227-28 (Tex.
1990); Trinity Indus., Inc. v. Ashland, Inc, 53 S.W.3d 852, 863 (Tex. App.--Austin 2001, pet.
denied). We review the denial of a motion for JNOV under a legal sufficiency or no evidence
standard of review. Trinity Indus., 53 S.W.3d at 863. That is, we review the evidence in the light
most favorable to the jury findings, considering only the evidence and inferences that support them
and disregarding all evidence and inferences to the contrary. Id. We will reverse a JNOV if there
is more than a scintilla of evidence to support the jury's finding. See Mancorp, 802 S.W.2d at 228.


Enforcement of the Contract

 In his first issue, Dr. McAnelly contends that the trial court's JNOV was improper
because he had an enforceable agreement to receive $25,000 in exchange for contributing certain
medical supplies to Brady Medical Clinic and promising not to compete with its doctors for two
years. A covenant not to compete is a disfavored contract in restraint of trade and will not be
enforced unless it meets certain statutory requirements. Alex Sheshunoff Mgmt. Servs., L.P. v.
Johnson, 124 S.W.3d 678, 684 (Tex. App.--Austin 2003, pet. granted); see Tex. Bus. & Com. Code
Ann. § 15.50 (West 2002). The enforceability of a covenant not to compete is a question of law. 
Light v. Centel Cellular Co. of Texas, 883 S.W.2d 642, 644 (Tex. 1994); Trilogy Software, Inc. v.
Callidus Software, Inc., 143 S.W.3d 452, 459 (Tex. App.--Austin 2004, no pet. h.). Generally, there
are two criteria for the enforceability of a covenant not to compete under section 15.50: the covenant
must (1) be ancillary to or part of an otherwise enforceable agreement at the time the agreement is
made, and (2) contain limitations as to time, geographical area, and scope of activity to be restrained
that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or
other business interest of the promisee. Light, 883 S.W.2d at 644; see Tex. Bus. & Com. Code Ann.
§ 15.50(a). The statute provides additional requirements for a covenant not to compete involving
a licensed physician. See Tex. Bus. & Com. Code Ann. § 15.50(b).

 The parties disputed the terms of the alleged agreement and whether the parties to the
alleged oral agreement anticipated that they would be bound despite the fact that other terms would
have to be agreed upon later. However, even assuming that the agreement was made as Dr.
McAnelly alleges, it would be unenforceable under section 15.50 because the agreement not to
compete was not "ancillary to an otherwise enforceable agreement." See Light, 883 S.W.2d at 644. 
In order for a covenant not to compete to be ancillary to an otherwise enforceable agreement it must
be designed to enforce a contractual obligation of one of the parties. Id. at 647 (citing Business
Elecs. v. Sharp Elecs., 485 U.S. 717, 738-39 (1988)); Trilogy, 143 S.W.3d at 462. "The otherwise
enforceable agreement must give rise to the 'interest worthy of protection' by the covenant not to
compete." Light, 883 S.W.2d at 644. "Examples of legitimate, protectable interests include business
goodwill, trade secrets, and other confidential or proprietary information." DeSantis v. Wackenhut
Corp., 793 S.W.2d 670, 682 (Tex. 1990); see Trilogy, 143 S.W.3d at 462.

 Here, the only otherwise enforceable agreement Dr. McAnelly contends was made
was the purchase of his remaining medical supplies. An agreement not to compete is wholly
unrelated to the purchase of medical supplies, and such a transaction is not an interest worthy of
protecting through a restraint of trade. See Light, 883 S.W.2d at 647; DeSantis, 793 S.W.2d at 682;
Trilogy, 143 S.W.3d at 462. Because we hold that the agreement Dr. McAnelly seeks to enforce was
an unenforceable restraint on trade, we overrule his first issue.


Promissory Estoppel

 In the absence of an enforceable covenant not to compete, Dr. McAnelly contends that
he was entitled to recover $25,000 under a promissory estoppel theory. Promissory estoppel is a
cause of action available to a promisee who has acted to his detriment in reasonable reliance on an
otherwise unenforceable promise. See Wheeler v. White, 398 S.W.2d 93, 97 (Tex. 1965); Bailey v.
City of Austin, 972 S.W.2d 180, 193 (Tex. App.--Austin 1998, pet. denied). An otherwise
unenforceable promise may be binding if the promisor should reasonably expect that the promise
will induce action or forbearance, the promisee substantially relies on the promise to his detriment,
and enforcement of the promise is necessary to avoid an injustice. Bailey, 972 S.W.2d at 192. 
Although Dr. McAnelly's testimony provides some evidence that there was a promise not to compete
and that he relied on that promise by refraining from practicing medicine part time, there is no
evidence that Dr. McAnelly's reliance was foreseeable. See English v. Fischer, 660 S.W.2d 521, 524
(Tex. 1984) (elements of promissory estoppel include (1) promise, (2) foreseeability of reliance
thereon by the promisor, and (3) substantial reliance by the promisee to his detriment). Dr.
McAnelly consistently stated during negotiations with Brady Medical Clinic that he intended to retire
from the practice of medicine. There is nothing in the record which indicates that Dr. McAnelly
planned to open a part-time practice after his retirement from WTMA and that he gave up that plan
based upon any promise made by Brady Medical Clinic. Furthermore, Dr. McAnelly testified that
Dr. Allen of Brady Medical Clinic informed him that the clinic would not pay him the $25,000
without a signed contract. The mere fact that Dr. McAnelly relied on an unenforceable agreement
that Brady Medical Clinic had repudiated does not make his actions foreseeable. We also cannot
conclude that the enforcement of an agreement which is essentially a naked restraint of trade is
necessary to avoid injustice. See Crossmark, Inc. v. Hazar, 124 S.W.3d 422, 434 (Tex.
App.--Dallas 2004, pet. denied) (naked restraint of trade against public policy). We therefore
overrule Dr. McAnelly's second issue that he is entitled to recover under a promissory estoppel
theory.


Quantum Meruit

 In his third issue, Dr. McAnelly contends that the trial court erred by granting JNOV
on his claim for recovery in quantum meruit for the value of the medical supplies conveyed to Brady
Medical Clinic. Quantum meruit is an equitable remedy which does not arise out of a contract but
is independent of it. Vortt Exploration v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990);
Colbert v. Dallas Joint Stock Land Bank, 102 S.W.2d 1031, 1034 (Tex. 1937). Generally, a party
may recover under quantum meruit only when there is no express contract covering the services or
materials furnished and when non-payment for the services or materials rendered would result in an
unjust enrichment to the party benefitted. Vortt Exploration, 787 S.W.2d at 944. The remedy is
based upon the promise implied by law to pay for materials furnished or services rendered and
knowingly accepted. Id. To recover under quantum meruit a claimant must prove that:


(1) valuable services were rendered or materials furnished;


(2) for the person sought to be charged;


(3) which services and materials were accepted by the person sought to be charged,
and used or enjoyed by him;


(4) under such circumstances as reasonably notified the person sought to be charged
that the plaintiff in performing such services was expecting to be paid by the
person sought to be charged.



Id.

 Here there is evidence in the record supporting each element of quantum meruit. Dr.
McAnelly, Dr. Castro, and WTMA administrator Tommy McMahon all testified that Dr. McAnelly
had an ownership interest in the remaining WTMA medical supplies because the cost of his share
of the supplies had been regularly deducted from his paycheck. It is also undisputed that Dr.
McAnelly sought payment from Brady Medical Clinic for the supplies as part of the agreement. 
Brady Medical Clinic does not deny that they took possession of the supplies and used them. An
inventory of the supplies was taken and their value estimated. The jury concluded that Dr. McAnelly
was entitled to $2400 compensation for his share of the medical supplies accepted by Brady Medical
Clinic.

 Viewing the record as a whole, there was more than a scintilla of evidence supporting
the jury's verdict awarding Dr. McAnelly $2400 in quantum meruit for the medical supplies
provided to Brady Medical Clinic. We therefore reverse the trial court's take nothing judgment
regarding the quantum meruit claim and render judgment upon the verdict in favor of Dr. McAnelly
in the amount of $2400.


Attorney's Fees

 Dr. McAnelly also challenges the trial court's JNOV on his claim for attorney's fees. 
Dr. McAnelly prevailed on his quantum meruit claim but did not prevail on his contract and
promissory estoppel claims. Because we render judgment in favor of Dr. McAnelly on his quantum
meruit claim, he is entitled to some attorney's fees. See Young v. Neatherlin, 102 S.W.3d 415, 421-22 (Tex. App.--Houston [14th Dist.] 2003, no pet.); Exxon Corp. v. Breezevale, Ltd., 82 S.W.3d
429, 442 (Tex. App.--Dallas 2003, pet. denied); City of Denton v. Mun. Admin. Servs., Inc., 59
S.W.3d 764, 772 (Tex. App.--Fort Worth 2001, no pet.). When a party seeks to recover attorney's
fees in a case involving multiple claims, one of which he prevailed on and one of which he did not,
the party must offer evidence segregating attorney's fees among the various claims. Beard Family
Partnership v. Commercial Indem., 116 S.W.3d 839, 850 (Tex. App.--Austin 2003, no pet.); see
also Houston Livestock Show & Rodeo, Inc. v. Hamrick, 125 S.W.3d 555, 585 (Tex. App.--Austin
2003, no pet.). But see Gorman v. Countrywood Property Owners Ass'n, 1 S.W.3d 915, 918 (Tex.
App.--Beaumont 1999, pet. denied); Aetna Cas. & Sur. v. Wild, 944 S.W.2d 37, 41 (Tex.
App.--Amarillo 1997, writ denied).

 Dr. McAnelly's attorney testified at trial that the issues raised were "inextricably
intertwined" and that segregation was impossible. An exception to the duty to segregate arises when
the attorney's fees are in connection with claims arising out of the same transaction and are so
interrelated that their prosecution entails proof of essentially the same facts. Stewart Title Gaur. Co.
v. Sterling, 822 S.W.2d 1, 11 (Tex. 1991); Hamrick, 125 S.W.3d at 585. Whether fees can be
segregated between various claims is a question for the court. Hamrick, 125 S.W.3d at 585. 
Contrary to the testimony of Dr. McAnelly's attorney, we find that the proof necessary for the
prosecution of McAnelly's quantum meruit claim differs substantially from that required to prove
his contract and promissory estoppel claims. The majority of the evidence in the record is devoted
to whether the alleged agreement was for Dr. McAnelly's goodwill or a covenant not to compete. 
The issues related to the ownership, transfer, and value of the medical supplies were relatively
undisputed and had little to do with the negotiations of the parties. We therefore conclude that the
attorney's fees are capable of segregation and that Dr. McAnelly is only entitled to those fees
attributable to the prosecution of his quantum meruit claim. See Sterling, 822 S.W.2d at 11-12. Here, the jury found that Dr. McAnelly's attorney's fees were $32,000 for preparation
and trial on all claims and $5000 each in the event of an appeal to this court and the supreme court. 
Among the factors considered by the jury in determining a reasonable award of attorneys fees was
"the amount involved and the results obtained." The jury was not asked to segregate the attorney's
fees. The determination of reasonable attorney's fees is a question for the trier of fact. Sterling, 822
S.W.2d at 12. Because there has been no determination of the reasonable attorney's fees attributable
to the quantum meruit claim, we remand the issue of attorney's fees to the trial court for further
consideration consistent with this opinion.


CONCLUSION


 We affirm the trial court's judgment denying Dr. McAnelly's contract and promissory 
estoppel claims, we reverse and render judgment in the amount of $2400 on Dr. McAnelly's
quantum meruit claim, and we remand the issue of attorney's fees to the trial court for further
consideration consistent with this opinion.



 

 Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed in Part; Reversed and Rendered in Part; Reversed and Remanded in Part

Filed: November 12, 2004