# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-04-00563-CV
---

**Chris Pearson and Service Tech, Inc., Appellants**

**v.**

**Visual Innovations Company, Inc., Appellee**

---
**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 03-1143-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**
---

## M E M O R A N D U M   O P I N I O N

Appellants Chris Pearson and Service Tech, Inc., appeal from a final judgment following a bench trial that awarded injunctive and monetary relief to Pearson's former employer, appellee Visual Innovations Company, Inc., based on Pearson's breach of his non-compete agreement, as well as his liability for fraud, breach of a fiduciary relationship, misappropriation of a trade secret, conversion of confidential information, and tortious interference with a business relationship. Because the challenge to the injunction is now moot, we will dismiss that portion of the appeal. In other respects, because the trial court correctly concluded, as a matter of law, that the covenant not to compete was enforceable, and Pearson admitted to breaching it, we will affirm the judgment's award of damages.

**BACKGROUND**

Beginning in 1998, Chris Pearson was employed as a salesman by Visual Innovations, an audio-visual system integration company specializing in government contracts. In the fall of 2002, Visual Innovations promoted Pearson to the management level as the "vice president of sales and marketing," making him the "lead contact" with several clients. Pursuant to his promotion, on October 26, 2002, Pearson and Visual Innovations entered both a compensation agreement and a confidentiality agreement, which included a covenant not to compete stating that, in exchange for Visual Innovations providing confidential information, specialized training, and other consideration, Pearson would not divulge the acquired information or compete within the defined territory or with defined customers for a period of two years following his termination. The agreement also provides that Pearson was not subject to termination for an initial period of six months unless Visual Innovations determined his performance was unsatisfactory. Thereafter, he was terminable at-will.

At a hearing on the temporary injunction, Visual Innovations's executive vice president, Lloyd McCarley, testified that after signing the agreement and becoming a member of the senior management committee, Pearson attended meetings at which company information was discussed that was not generally available to lower level employees or to people outside of the company. McCarley testified that this was "definitely" the type of proprietary information that Visual Innovations sought to protect by having Pearson enter the confidentiality and non-compete agreement. Further, McCarley testified that Visual Innovations paid to send Pearson to a week-long training class in the spring of 2003 and that the company "didn't allow anyone else to do that." This

2

training enhanced Pearson's value as a salesman because it taught him the engineering and programming aspects of the product, which most salesmen were not given an opportunity to learn.

On December 10, 2003, Pearson resigned from Visual Innovations. On December 12, he began working for Service Tech, a company incorporated and wholly owned by Pearson's wife.[1] Pearson admitted that two of Service Tech's largest clients, the Electric Reliability Council of Texas ("ERCOT") and the City of Killeen—both of which were former clients of Visual Innovations that Pearson had worked closely with until his resignation—entered contracts with Service Tech on December 10 or 12, 2003. Pearson testified that, while still employed by Visual Innovations, he had "numerous" conversations with representatives of ERCOT and the City of Killeen about transferring their business to Service Tech and that, prior to his resignation, he received "verbal assurances" that these entities would become clients of Service Tech. Pearson's wife confirmed in her deposition testimony that Pearson had negotiated the contracts with these clients for Service Tech based on his past dealings with them. Pearson further testified that it would cause him "substantial" financial harm of "[e]asily a million dollars" if Service Tech were to lose its relationships with ERCOT and the City of Killeen. He and his wife agreed that all of Service Tech's revenue was earned from clients that had formerly been clients of Visual Innovations. This testimony reflects that Pearson violated his agreement, which expressly provides that "while employed, [Pearson would not] take any action designed or reasonably calculated to induce a customer to cease doing business with Employer," and that Pearson would not, for two years following his termination "compete with the respect to Subject Customers," defined as "existing

---

[1] Visual Innovations alleged that Service Tech was Pearson's alter ego.

customer[s] of Employer as of the date Employee's employment under this Agreement terminates and with whom Employee has had personal contact with during employment."

Pearson further admitted that, prior to his resignation, he downloaded copies of Visual Innovations's files, deleted them from the company's computers, and saved personal copies on his home computer. Executive vice president McCarley averred that Pearson permanently deleted multiple client records and thousands of company e-mails from Visual Innovations's database and that he destroyed the original, signed copies of several employees' non-compete agreements (some of whom also resigned and went to work for Service Tech). When asked whether he had destroyed any original copies of other employees' non-compete agreements, Pearson responded, "I'm not sure which ones I did and which ones I didn't." Pearson also admittedly took equipment from Visual Innovations. Again, Pearson's testimony constitutes an admission of a violation of the agreement, which prohibited Pearson from "using, disseminating, disclosing, [or] divulging [] in any manner . . . 'Confidential Information' of Employer," including customer and employee information and "all computer materials or computerized information concerning Employer," and from employing personnel from Visual Innovations for a two-year period following his termination.

After Pearson's resignation, Visual Innovations discovered that files and equipment were missing. On December 31, 2003, Visual Innovations filed its original petition and obtained a temporary restraining order (TRO) against Pearson.[2] Following an extension of the TRO and a

___

[2] Pearson claimed that, after the TRO was issued, he discontinued his work for Service Tech and returned all files and equipment to Visual Innovations. Visual Innovations countered that Pearson returned only copies of the files and that it is still missing the originals of several documents.

hearing on the temporary injunction, the court entered a temporary injunction against Pearson on February 11, 2004, and set the trial on the merits for April 5.[3]

After a bench trial, which was conducted solely on paper pursuant to the parties' Rule 11 agreement, the court entered its final judgment on June 21, 2004, (1) permanently enjoining Pearson and Service Tech from competing with Visual Innovations or using its confidential information, and (2) awarding Visual Innovations "$250,000 in lost profits and additional [] costs" that were incurred "as a result of . . . Pearson ha[ving] committed fraud, as well as breach of a fiduciary relationship, breach of contract, misappropriation of a trade secret, conversion of confidential information, and tortious interference with a business relationship." Attorney's fees were also awarded to Visual Innovations. No findings of fact or conclusions of law were requested or issued.

Pearson filed a motion for new trial or, alternatively, a motion to modify, asserting that a new trial should be granted because the covenant not to compete was unenforceable and that the order should be modified so that the injunction would expire on December 10, 2005, because the non-compete agreement contains a two-year limitations period that was due to expire on that date. The motion for new trial was overruled by operation of law, but the court granted Pearson's motion to modify, thereby limiting the term of the injunction so that it would expire on December 12, 2005. This appeal followed.

---

[3] Service Tech was added as a defendant in an amended pleading by Visual Innovations, and the parties entered a Rule 11 agreement that the April 5 trial would result in a final judgment as to both Pearson and Service Tech, without the need for a temporary injunction first being entered against Service Tech.

**ANALYSIS**

In a single issue, Pearson urges that, because the covenant not to compete was unenforceable, the trial court erred by (a) entering the injunction and (b) awarding monetary relief to Visual Innovations. We will address each in turn.

**Injunctive Relief**

On December 30, 2005, Visual Innovations filed a motion to dismiss the appeal as moot because the permanent injunction expired as of December 10. Pearson seems to acknowledge in his response to the motion that the injunctive issue is now moot, arguing that even if "the permanent injunction has expired," the portion of the judgment awarding monetary damages "remains a viable, contested issue that is the subject of this appeal."

We agree with Visual Innovations that, due to the passage of time, there is no longer a live controversy about the injunction's validity, and, therefore, we dismiss the portion of Pearson's and Service Tech's appeal challenging the injunctive relief. *See NCAA v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999) (when injunction becomes inoperative due to passage of time, issue of its validity becomes moot, and appellate court decision about injunction's validity under such circumstances would constitute impermissible advisory opinion); *see also White v. Cannon*, No. 12-05-00095-CV, 2005 Tex. App. LEXIS 4546, at *1-3 (Tex. App.—Tyler, June 15, 2005, no pet.) (mem. op.) (appeal claiming that injunctive relief was improper because covenant not to compete was unenforceable was dismissed as moot when limited term of injunction expired).

We also agree, however, with Pearson's assertion that his challenge to the monetary relief remains a viable issue. Accordingly, we will address the merits of that issue.

6

**Monetary Relief**

Pearson complains that, absent an enforceable covenant not to compete, there is no evidence or insufficient evidence to support the monetary relief contained in the judgment.[4] He does not claim that the amount of damages awarded was improper. Rather, he claims that because the award was based on his breach of the covenant, and the covenant was unenforceable, the award should be reversed.[5] Visual Innovations responds that the covenant was enforceable and, therefore, the court's damages award should be affirmed. Thus, whether the damages award should be affirmed or reversed turns solely on whether the trial court correctly concluded that the covenant was enforceable. Whether a covenant not to compete is enforceable presents a question of law that we review de novo. *See Light v. Centel Cellular Co.*, 883 S.W.2d 642, 644 (Tex. 1994); *see also Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 463 (5th Cir. 2003).

### *Enforceability of Covenant Not to Compete*

Section 15.50 of the business and commerce code sets forth the criteria for determining whether a covenant not to compete is enforceable. Tex. Bus. & Comm. Code Ann. § 15.50(a) (West 2002). The statute provides in relevant part that

> a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains

---

[4] Unlike the injunction, which was issued against both defendants, the damages were assessed only against Pearson. Thus, the issue of monetary relief does not involve Service Tech.

[5] Pearson's challenge to the "monetary relief" is urged in terms of a challenge to the award of damages, and he makes no reference to the award of attorney's fees. We therefore consider the attorney's fees award unchallenged on appeal. *See* Tex. R. App. P. 38.1(h) (appellant's brief must contain "a clear and concise argument . . . with appropriate citations to authorities").

limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

*Id*.

Thus, section 15.50 imposes two threshold requirements that must be met for a covenant not to compete to be enforceable. *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 459 (Tex. App.—Austin 2004, pet. filed). The covenant must (1) be ancillary to or part of an otherwise enforceable agreement at the time the agreement was made and (2) contain limitations as to the time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. *Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 1999, no pet.). On appeal, Pearson challenges only the first requirement.

The seminal case interpreting section 15.50 is *Light v. Centel Cellular Co.*, 883 S.W.2d at 644. In *Light*, the court explained that, for the covenant to be enforceable, the agreement that the covenant is part of or ancillary to must be supported by non-illusory consideration. *Id*. at 645. As an example of non-illusory consideration, the court provided the illustration of an employer providing specialized training in exchange for the employee's promise to keep trade secrets confidential. *Id*. at 645 n.6. For a covenant not to compete to be "ancillary" to an otherwise enforceable agreement, the *Light* court held that "(1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee from competing; and (2) the covenant must be designed to enforce the employee's consideration or

return promise in the otherwise enforceable agreement." *Id*. at 647. Thus, a covenant not to compete would be enforceable if it was ancillary to an agreement whereby an employer provided confidential or proprietary information in exchange for an employee's promise to not disclose that information. *Id*. at 647 n.14.[6]

The crux of Pearson's challenge to the enforceability of the covenant is that he was an at-will employee and, as such, any promise made by Visual Innovations was illusory. Visual Innovations counters that Pearson was not an at-will employee and that non-illusory consideration was provided in an otherwise enforceable agreement made ancillary to the covenant not to compete.

The Employment Confidentiality Agreement states that Pearson's employment "shall continue for a period of six months subject to termination as set forth below." Thereafter, the termination clause states that Visual Innovations could terminate Pearson if he "failed to perform

---

[6] Several courts following *Light* have applied its analysis to conclude that a covenant not to compete is supported by non-illusory consideration where an employer provides confidential and proprietary information and/or specialized training in exchange for an employee's promise to not compete or disclose the acquired information. *See*, *e.g.*, *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 465-66 (5th Cir. 2003) (covenant enforceable and supported by non-illusory consideration where employer gave confidential information in exchange for employee's non-solicitation promise, coupled with employer's payment of $35,000 to execute agreement); *Wright v. Sport Supply Group, Inc.*, 137 S.W.3d 289, 297 (Tex. App.—Beaumont 2004, no pet.) (consideration supporting covenant was adequate where, in exchange for employee signing non-compete agreement, employer was obligated to provide confidential information and specialized training); *Curtis v. Ziff Energy Group, Ltd.*, 12 S.W.3d 114, 118 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (employer's "promise[] to provide confidential information and trade secrets," exchanged for employee's "promise[] not to disclose or use the trade secrets until after his employment," constituted non-illusory consideration made as part of covenant not to compete); *Ireland v. Franklin*, 950 S.W.2d 155, 158 (Tex. App.—San Antonio 1997, no writ) (employer's "promise to share the listed trade secrets," exchanged for employee's "promise not to disclose or use the trade secrets during or after her employment," constituted non-illusory agreement ancillary to covenant; covenant was enforceable because "this was the situation blueprinted by the supreme court [in *Light*]").

9

to the satisfaction of Employer in Employer's sole discretion." In a similar case, the Dallas court held that an employee's status was not "at-will" where the contract provided the president "sole discretion" to terminate the employee if he determined the employee's performance was "unsatisfactory." *Zep Mfg. Co. v. Harthcock & Panther Indus.*, 824 S.W.2d 654, 659 (Tex. App.—Dallas 1992, no writ). Based on its determination that the employee had a "satisfaction" rather than an "at-will" contract, the court held that the employment agreement, which contained a covenant not to compete, was enforceable.[7] *Id*.; *see also O'Brien v. Rattikin Title Co.*, No. 2-05-238-CV, 2006 Tex. App. LEXIS 1506, *11 (Tex. App.—Fort Worth, Feb. 26, 2006, no pet.) (mem. op.) (employment contract, which was for five-year period and on monthly basis thereafter, was not at-will); *Friedman, Clark & Shapiro, Inc. v. Greenberg, Grant & Richards, Inc*., No. 14-99-01218-CV, 2001 Tex. App. LEXIS 6525, *9-10 (Tex. App.—Houston [14th Dist.] Sept. 27, 2001, pet. denied) (mem. op.) (employee was not at-will where contract provided employer sole discretion to terminate employee for unsatisfactory performance; thus "covenants not to compete were ancillary to or part of otherwise enforceable agreements").

As contrary authority, Pearson cites *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 501-02 (Tex. 1998). This case is, however, distinguishable. *Brown* held that an employer's "verbal assurance" that an employee "would be able to keep [her] job . . . as long as [she] was doing [her] job . . . unless there was a good reason or good cause to fire [her]" was insufficient

---

[7] Nevertheless, the court ultimately held that the covenant was "unenforceable on grounds of public policy" because it did "not contain a reasonable restriction of geographical area"—an issue not raised by Pearson on appeal. *See Zep Mfg. Co. v. Harthcock & Panther Indus.*, 824 S.W.2d 654, 661 (Tex. App.—Dallas 1992, no writ).

10

to "modify an employee's at-will status absent a definite, stated intention to the contrary" because such "[g]eneral statements like those made to Brown simply do not justify the conclusion that the speaker intends by them to make a binding contract of employment." *Id*. The *Brown* court stated, "[f]or such a contract to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id*. at 502. In Pearson's case, the circumstances were clearly articulated and set forth in a written, signed contract.

Pearson additionally cites *Hallmark v. Port/Cooper-T. Smith Stevedoring Co.*, 907 S.W.2d 586, 592 (Tex. App.—Corpus Christi 1995, no writ), and *NHA, Inc. v. Jones*, 500 S.W.2d 940, 944 (Tex. App.—Fort Worth 1973, writ ref'd n.r.e.). These cases, however, were not decided in the context of a covenant not to compete, in which the purpose for determining whether one is employed at-will is to determine whether there is valuable, non-illusory consideration provided. To the extent that the language in these cases conflicts with *Zep Manufacturing*, we are persuaded by the latter, which was decided in terms of a covenant not to compete. *See* 824 S.W.2d at 661.

Accordingly, Pearson was not an at-will employee at the time he entered the agreement. We must still determine, however, whether Visual Innovations provided non-illusory consideration to support the agreement. The Employee Confidentiality Agreement states that Visual Innovations would provide Pearson specialized training and access to its confidential information in exchange for Pearson's promises not to divulge any of that information, as defined in the agreement, and not to otherwise compete with Visual Innovations in the defined territory or regarding a defined group of customers for a period of two years following his termination. Further, it states that "[t]his non-compete agreement is an ancillary to an enforceable employment agreement.

11

Employee acknowledges that employee has received consideration for executing this non-compete agreement in addition to 'Standard Salary' compensation received under the employment agreement." The Employment Compensation Agreement, which was signed the same day, reflects that Visual Innovations promised to make Pearson a 2% stock owner in the company upon his execution of the agreement and promotion to senior management.[8]

Visual Innovations's promises to provide Pearson confidential and proprietary information, specialized training, and stock ownership were not illusory because, at the time the agreement was entered, Visual Innovations was bound to employ Pearson for at least six months unless his performance was unsatisfactory. *See Provenzale*, 334 F.3d at 465-66 (covenant supported by non-illusory consideration where, in exchange for employee's promise, employer provided confidential information and paid $35,000 to execute agreement).[9] Further, Visual Innovations's provision of confidential information and specialized training "g[a]ve rise to the employer's interest in restraining the employee from competing," and "the covenant [was] designed to enforce the employee's . . . return promise [not to compete or disclose information] in the otherwise enforceable agreement." *See Light*, 883 S.W.2d at 647.

The fact that Pearson was not an at-will employee distinguishes this situation from an example discussed in *Light*, where the supreme court explained that, in an at-will context, an

---

[8] Pearson alleged at trial that this promise was fraudulent but he has dropped that claim on appeal.

[9] *See also Totino v. Alexander & Assocs.*, No. 01-97-01204-CV, 1998 Tex. App. LEXIS 5295, *19, *26 & n.21-22 (Tex. App.—Houston [1st Dist.] Aug. 20, 1998, no pet.) (award of stock options was non-illusory consideration) (citing other cases where covenant not to compete was supported by consideration of stock options).

12

employer's mere promise of confidential information and training is illusory "because the employer could fire the employee and escape the obligation to perform." *Id*. at 645 n.6. Here, Visual Innovations was obligated to fulfill its promises for at least six months, thereby making them enforceable by Pearson. *See O'Brien*, 2006 Tex. App. LEXIS 1506, at *11 (employer's promise to provide confidential information not illusory where employment contract was for five-year term, not at-will). And, Visual Innovations's vice president testified that the company actually provided such information and training to Pearson. Just as the supreme court contemplated in *Light*, "if an employer gives an employee confidential and proprietary information or trade secrets in exchange for the employee's promise not to disclose them, and the parties enter into a covenant not to compete, the covenant is ancillary to an otherwise enforceable agreement." 883 S.W.2d at 647 n.14. Thus, the covenant not to compete in this case was ancillary to an otherwise enforceable agreement, therefore satisfying section 15.50. *See* Tex. Bus. & Comm. Code Ann. § 15.50(a).

As stated, Pearson does not deny that he violated the employment agreement. In fact, Pearson admitted to several breaches of the covenant not to compete, including negotiating deals with ERCOT and the City of Killeen to transfer their business from Visual Innovations to Service Tech, downloading and deleting Visual Innovations's company files and client information, and hiring former employees of Visual Innovations to work at Service Tech. Also, Pearson does not contend that the amount of damages ($250,000) was in error. Instead, Pearson's challenge is confined to the argument that, because the covenant was unenforceable, he should not be liable for breaching it. Having determined that the covenant not to compete was enforceable, and further noting Pearson's admissions of violating the agreement, we hold that the monetary relief awarded

13

by the trial court, which was based in part on Pearson's breach of the non-competition agreement, should be affirmed.

### *Alternative Argument: Waiver*

As an alternative basis for upholding the monetary relief, Visual Innovations contends that the damages award was not based solely on Pearson's breach of the covenant. Instead, the judgment stated that the damages were incurred as a result of Pearson's commission of "fraud, as well as breach of a fiduciary relationship, breach of contract, misappropriation of a trade secret, conversion of confidential information, and tortious interference with a business relationship." According to Visual Innovations, because Pearson confined his challenge to the enforceability of the covenant, he waived error on the other five causes of action: fraud, breach of a fiduciary relationship, misappropriation of a trade secret, conversion of confidential information, and tortious interference with a business relationship.

We agree that, by presenting no argument to this Court on whether the trial court erred in determining that Pearson was liable for fraud, breach of a fiduciary relationship, misappropriation of a trade secret, conversion of confidential information, and tortious interference with a business relationship, Pearson has waived the right to contest Visual Innovations's monetary relief on those grounds. *Specialty Retailers v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996); *Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 7 (Tex. App.—San Antonio 2004, pet. denied) ("Generally, when a trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on any ground

with merit to which no complaint is made."); *see also* Tex. R. App. P. 38.1(h) (appellant's brief must contain "a clear and concise argument . . . with appropriate citations to authorities").

## CONCLUSION

Pearson and Service Tech's challenge to the injunction is dismissed as moot because the term of the injunction expired December 10, 2005. Pearson's challenge to the monetary relief awarded to Visual Innovations is overruled because the trial court correctly concluded that the covenant not to compete was enforceable and had been breached, and Pearson waived error on each of the remaining causes of action in support of the damages. Finally, Pearson did not challenge the award of attorney's fees. Thus, the judgment's monetary awards of damages and attorney's fees are affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Dismissed as Moot in Part

Filed: April 6, 2006